THE PEOPLE OF THE STATE OF NEW YORK ex
rel. CHARLES STAUDACHER v. WILLIAM B. WEBB,
Sheriff of Ulster County.

*Recorder of Kingston — power of, to commit a prisoner to jail for non-payment
of costs.*

Section 45 of chapter 150 of 1872, gives the recorder of the city of Kingston
exclusive jurisdiction to issue all criminal process, hear complaints, and hold
courts of special sessions, with all the powers and jurisdiction of such courts;
to try, convict and sentence all persons triable by such courts. Section 48, of
chapter 387 of 1877, provides that in cases triable before him, if the accused
elects not to be tried and waives an examination, the recorder shall collect
from him all costs of the proceedings, and shall have power to commit him to
jail for non-payment thereof, not exceeding five days.
*Held,* that the latter act, authorizing the commitment of the prisoner for non-
payment of the costs, was constitutional and valid.

Certiorari to the county judge of Ulster county, to review an
order made in *habeas corpus* proceedings remanding a prisoner to
defendant's custody.

The relator was originally committed to the common jail of
Ulster county by the following commitment:

ULSTER COUNTY, ⎱ ss:
CTIY OF KINGSTON. ⎰

*To any Constable of said County, and to the Keeper of the Common
Jail of said County, Greeting:*

Whereas, Charles Staudacher was arraigned before the under-
signed, recorder of said city, on the 26th day of July, 1878,
charged, on the oath of Daniel R. Johnston, with a misdemeanor,
viz.: with having, on the 14th of July, 1878, at said city, in said
county, violated the excise law by selling or giving away intoxi-
cating liquors on Sunday.

And, whereas the said Charles Staudacher waived an examina-
tion on said charge; and whereas the costs of the criminal pro-
ceedings against the said Charles Staudacher were ascertained to
be four dollars five cents; and whereas payment of the said costs
was demanded of the said Charles Staudacher by the undersigned,
recorder, pursuant to the provisions of section 6, chapter 387 of

the Laws of 1877 of the State of New York; and whereas the said Charles Staudacher has refused or neglected to pay the said costs:

These are therefore to command you, the said constable, forthwith to convey and deliver the said Charles Staudacher to the said keeper; and you, the said keeper, are hereby commanded to receive the said Charles Staudacher into your custody, in the said jail, and him there safely keep until the said costs are paid, and, in default of the payment thereof, for the term of four days, or he be thence discharged in due course of law.

Given under my hand at the said city of Kingston, this 2d day of August, 1878.                    AUG. SCHEPMOES,
                              Recorder of the City of Kingston.


*D. M. DeWitt*, for the relator.


*A. T. Clearwater*, district attorney, for the defendant.


BOARDMAN, J. :

The prisoner was sentenced to four days' imprisonment, on the 2d day of August, 1878. His term of imprisonment has long since expired, and he has been discharged. The decision of this court upon the merits is purely speculative, and affects no person or rights. It may serve for a theoretical precedent.

The counsel, however, seek a decision to control future action in similar cases, and we will briefly give the conclusion to which we have come. Section 2 of article 1 of the Constitution provides that " the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever." Section 6 of the same article provides that " no person shall be deprived of life, liberty or property, without due process of law." By section 45 of chapter 150, Laws of 1872, the recorder of the city of Kingston has (for the purpose of this case) exclusive jurisdiction to issue all criminal process, to hear all complaints and examinations, to hold courts of special sessions, with all the powers and jurisdictions of such courts ; to try, convict and sentence, all persons who may be guilty of offenses triable by such courts, and his court has power to hear and determine charges for every misdemeanor committed

within said city, for which the accused shall elect to be tried before said court.    By section 48 of chapter 387, Laws of 1877, it is provided that in cases triable before the recorder, if the accused elects not to be tried and waives an examination, the recorder shall collect from the accused all costs of the proceeding and shall have power to commit to jail for non-payment thereof, not exceeding five days.    Under these provisions of the charter of the city of Kingston, the relator was committed to jail for four days unless the costs were sooner paid.    It is claimed by the relator that these provisions of the charter of the city of Kingston are unconstitutional, by reason of their violation of article 1, sections 2 and 6, above quoted.    No other question is presented for our decision.

It cannot be justly claimed that the relator was deprived of his right of trial by jury.    The imprisonment for non-payment of costs did not affect his ultimate right to such trial.    As well might the claim be made where a prisoner, under similar circumstances, was unable to give bail, and, as a consequence, was committed to jail.    The requirement in the one case is, that he shall pay four dollars and five cents costs; and, in the other, that he shall give bail for his future appearance, etc.    In either case, the imprisonment is due to his own election.    A court is provided for the trial of the case at a trifling expense and promptly.    Instead, he prefers to postpone action by requiring the finding of an indictment by a grand jury and the trial thereof by a court of record.    For this luxury, the Legislature says he shall pay certain costs incurred before his election is made.    This legislation is for the public welfare; it is in the interest of an economical administration of the laws.    It is to be regretted that so many trivial offenses are permitted, as a matter of course, to occupy the time and attention of grand and petit jurors and courts of record, with all the expensive paraphernalia incident to them.    As a check to this tendency, the payment of costs in this case was lawfully required of the accused.    The power of the Legislature is supreme, subject to the limitations of the Constitution.    The present act is not obnoxious to the censure of taking from the relator the right of trial by jury, provided for in section 2 of article 1 of the Constitution.

If, however, there could be any doubt upon this point, the twenty-

sixth section of the sixth article relieves us by providing that "courts of special sessions shall have such jurisdiction of offenses of the grade of misdemeanors as may be prescribed by law." That section would justify the Legislature in making the jurisdiction of the special sessions exclusive in such cases, and compelling the trial of all misdemeanors in that court. But, in this instance, the Legislature has given to the accused an option, to be followed in a certain event by the payment of certain costs and expenses, under pain of imprisonment. (*People ex rel. Murray* v. *Justices*, 18 L. J., 254.)

The manner in which such costs are charged and payment enforced is "due process of law." The accused subjects himself to such liability with full knowledge of the law. He voluntarily assumes such payment by the election he makes. He is offered all that he can require under the Constitution, without payment of any costs. He refuses that, and demands a far more costly, troublesome and dilatory mode. He is told that he must pay for that privilege. By his voluntary act he waives any personal right affecting his right of property, however derived, and subjects himself to the written law. (*Phyfe* v. *Eimer*, 45 N. Y., 102.) The relations between the relator and the State may be likened to those of parties to a contract. The State provides a tribunal for the trial of the relator; but he can have another and more expensive court for his trial if he wishes. But in that event he must pay certain costs. By his action he waives any objection, and consents that the costs may be so collected. (*People* v. *Quigg*, 59 N. Y., 83.) In *Phelps* v. *Racey*, CHURCH, Ch. J., says: "The Legislature may pass many laws, the effect of which may be to impair or even destroy the right of property. Private interest must yield to the public advantage." (60 N. Y., 14.) Such are in one sense license laws, laws relating to public safety or the public health, and laws restraining the keeping or use of dangerous property. It seems to us the act in question does not exceed the limits of constitutional legislation. It is a just and proper restriction of the right of accused persons to select the forum in which they shall be tried. It is made in the public interest and for the public benefit. It is in aid and encouragement of the prompt and economical administration of criminal law, and at the

same time it takes away no constitutional right of the accused. But if this conclusion were doubtful, it would still be our duty to affirm this order. A statute will not be declared void unless such decision is beyond reasonable doubt. Every presumption must be in favor of the constitutionality of a statute. If two constructions may be given, one of which will render a law void and the other valid, the latter must be adopted. (*Metropolitan Board of Excise* v. *Barrie*, 34 N. Y., 657.)

The writ of *certiorari* must be dismissed, with costs against relator.

Present — LEARNED, P. J., BOARDMAN and WESTBROOK, JJ.

*Certiorari* dismissed, with costs against the relator.